## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **AUBREY A. KILLMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-299-AMG** |
| | ) | |
| **KILOLO KIJAKAZI, ACTING** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Aubrey A. Killman ("Plaintiff") brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under the Social Security Act. (Doc. 1). Defendant has answered the Complaint and filed the Administrative Record ("AR"). (Docs. 14, 15). The parties have briefed the issues (Docs. 20, 26) and consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 19). Based on the Court's review of the record and issues presented, the Court affirms Defendant Commissioner's decision.

## I.     The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A

physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the

Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[1] whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the Plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience."  *Id.*  "The claimant is entitled to disability benefits only if he is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted).  A court's review is based on the administrative record, and a court must "meticulously examine the

---

[1] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.      Procedural History

Plaintiff filed an application for DIB alleging a disability onset date of December 7, 2015.  (AR, at 204-05).  The SSA denied the application initially and on reconsideration. (AR, at 134-138, 140-143).  An administrative hearing was then held on September 10, 2018.  (AR, at 68-99).  The Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (AR, at 10-26).  The Appeals Council denied Plaintiff's request for review.  (AR, at 1-3).  Thus, the ALJ's decision is the final decision of the Commissioner.  *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III.     The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 7, 2015, the alleged onset date.  (AR, at 12).  At Step Two, the ALJ found that Plaintiff had the severe impairments of mild degenerative disc disease, multiple sclerosis, degenerative joint disease, depression, anxiety disorder, and obesity.

(*Id*.)  At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*.)  The ALJ then determined that Plaintiff had the RFC to perform sedentary work except she could never climb ladders, ropes, or scaffolds, and that she retained the ability to perform simple, routine, and repetitive tasks.  (AR, at 15).  At Step Four, the ALJ found that Plaintiff could not perform her past relevant work, but at Step Five found that Plaintiff could perform jobs existing in significant numbers in the national economy, such as call out operator, information clerk, and charge account clerk.  (AR, at 24-26).  Accordingly, the ALJ found that Plaintiff had not been under a disability since December 7, 2015.  (AR, at 26).

## IV.    Issues Presented

On appeal, Plaintiff argues that (1) the ALJ should have given controlling weight to Dr. Reyna's treating source opinions, rendered on November 29, 2016, about Plaintiff's functionality, and (2) the ALJ failed to consider the proper factors and articulate good reasons for only giving the opinions partial weight.  (Doc. 20, at 3-20).

## V.    Analysis

### A.    The Treating Physician Rule

Plaintiff argues that the ALJ erred in failing to give controlling weight to certain medical opinions[2] about Plaintiff's functionality that were provided on November 29,

---

[2] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527.

2016, by Dr. Reyna, a treating source for Plaintiff.  Because Plaintiff filed her claim before

March 27, 2017, the ALJ was required to analyze opinion evidence under the "treating

physician rule" set forth in 20 C.F.R. § 404.1527.  *See Langley v. Barnhart*, 373 F.3d 1116,

1119 (10th Cir. 2004) (applying the "treating physician rule" in 20 C.F.R. § 404.1527(d)(2)

[renumbered 20 C.F.R. § 404.1527(c)(2)]).  According to this rule, "[g]enerally, [the SSA]

give[s] more weight to medical opinions from [claimants'] treating sources."  20 C.F.R. §

404.1527(c)(2).  A "treating source" is an "acceptable medical source who provides [the

claimant], or has provided [the claimant], with medical treatment or evaluation and who

has, or has had, an ongoing treatment relationship with [the claimant]."  *Id.* at §

404.1527(a)(2).  "[I]n evaluating the medical opinions of a claimant's treating physician,

the ALJ must complete a sequential two-step inquiry, each step of which is analytically

distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

Step one is to determine whether the treating source's opinion "is well-supported by

medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in the record."  *Id.*  If the opinion is well-supported and

not inconsistent, it is given controlling weight.  *Id.*  If the opinion is not given controlling

weight, step two requires the ALJ to apply specific factors "in determining the weight to

give the medical opinion."  20 C.F.R. § 404.1527(c)(2).

> Those factors are: (1) the length of the treatment relationship and the
> frequency of examination; (2) the nature and extent of the treatment
> relationship, including the treatment provided and the kind of examination
> or testing performed; (3) the degree to which the physician's opinion is
> supported by relevant evidence; (4) consistency between the opinion and the
> record as a whole; (5) whether or not the physician is a specialist in the area

upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley*, 373 F.3d at 1119; 20 C.F.R. § 404.1527(c).

The ALJ "must give good reasons in [the] notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted). The reasons must be "tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "[A]lthough the ALJ's decision need not include an *explicit discussion* of each factor, the record must permit us to reach the conclusion that the ALJ *considered* all of the factors." *Andersen v. Astrue*, 319 F. App'x 712, 720, n.2 (10th Cir. 2009).

**B.    Dr. Reyna's November 29, 2016, Opinions**

Dr. Reyna, a neurologist, treated Plaintiff at the Oklahoma Medical Research Foundation's Multiple Sclerosis Center of Excellence from December 29, 2014, until the date of Plaintiff's hearing (AR, at 500-11, 518-23, 527-38, 545-49, 847-52, 859-65, 873-79, 883-88, 895-900, 1182-92, 1199-1200) and previously at the University of Oklahoma Medical Center (AR, at 653-59, 662-67). Plaintiff focuses on opinions made by Dr. Reyna on November 29, 2016, specifically a statement to American Fidelity Assurance, and an accompanying multiple sclerosis medical source statement and an autoimmune disorder medical assessment form. (AR, at 1171-80). Dr. Reyna opined that Plaintiff is totally and permanently disabled by her multiple sclerosis, "a progressive neurological disease" that Dr. Reyna "hope[s] to stabilize." (AR, at 1172). Dr. Reyna listed Plaintiff's diagnoses as:

7

"multiple sclerosis, hemiplegia, paresthesias, fatigue, sleep disorder, foot drop (R), chronic pain [lower] back, polyarthralgia, gait abnormality, [and] spasms."  (AR, at 1172).  Dr. Reyna listed the following functional limitations: "depression, gait abnormality (KAFO), muscle spasms, fatigue, headaches, eye pain, [and] memory issues."  (AR, at 1172).  Dr. Reyna noted the fatigue "is best described as lassitude rather than fatigue of motor function" and is "typical of M.S. patients."  (AR, at 1174).

Dr. Reyna opined that Plaintiff can walk two blocks without rest or severe pain, sit for an hour at a time,[3] and stand for twenty minutes at a time.  (AR, at 1174, 1178-79).  She further opined that Plaintiff can stand/walk for less than two hours and sit for about four hours total in an eight-hour workday.  (AR, at 1174, 1178-79.).  Dr. Reyna also stated that Plaintiff requires "a job that permits shifting positions ***at will*** from sitting, standing or walking" and will require two or three "unscheduled breaks during a working day" of five to ten minutes.  (AR, at 1174).  Dr. Reyna stated that Plaintiff's legs do not need to be elevated with prolonged sitting.  (AR, at 1175).  Dr. Reyna stated that Plaintiff can never lift or carry more than ten pounds, can occasionally lift less than ten pounds, and can never twist, stoop, or crouch/squat.  (AR, at 1175, 1179-80).  Dr. Reyna also opined that during an eight-hour workday Plaintiff can: use both of her hands to grasp, turn, and twist objects 10% of the time, use fingers on both of her hands for fine manipulations 60-80% of the time, use both of her arms to reach in front of her body 5-10% of the time, and never use

---

[3] On the multiple sclerosis statement, Dr. Reyna indicates that Plaintiff can sit for one hour at a time (AR, at 1174), but in the autoimmune statement, Dr. Reyna indicates Plaintiff can sit for two hours at a time (AR, at 1178).

her arms to reach overhead.  (AR, at 1175, 1180).  Dr. Reyna stated that Plaintiff "would likely be 'off task' at least 15% of the time" because her symptoms "interfere with the attention and concentration needed to perform even simple work tasks."  (AR, at 1178).

### C.   The ALJ Applied the Correct Legal Standards When Deciding That Dr. Reyna's Opinions Were Entitled To Partial, Not Controlling, Weight, and the Decision Is Supported By Substantial Evidence.

Plaintiff argues that "the ALJ did not adequately consider treating source evidence concerning her impairments," specifically the November 29, 2016, opinions of Dr. Reyna. (Doc. 20, at 10).  Plaintiff's argument fails because the ALJ applied the correct legal standards in evaluating Dr. Reyna's opinions, and the ALJ's decision is supported by substantial evidence in the record.

Regarding Dr. Reyna's November 29, 2016, opinions, the ALJ stated:

> The undersigned affords **partial weight** to the opinions of Dr. Reyna, as is [sic] they are **not wholly supported by her own treating notes or other evidence contained in the record**.  While the undersigned finds that the claimant experiences some exertional limitations, the **evidence does not support** limitations of lifting less than ten pounds, or sitting only four hours during an eight-hour workday as the claimant's lumbar examinations revealed no significant limitations in range of motion or strength.   In addition, there is **no evidence to support** the manipulative limitations stated above, as the claimant's x-rays of the bilateral hands were normal, as was her upper extremity range of motion, grip strength and sensation.  Finally, the undersigned affords minimal weight to Dr. Reyna's medical opinion that the claimant was "totally and permanently disabled," as that is an opinion reserved to the Commissioner, and therefore not entitled to any significant weight.[4]

---

[4] Indeed, "certain opinions by medical providers, including opinions that a claimant is disabled . . . are not medical opinions but, instead, opinions on issues reserved to the Commissioner because they are administrative findings.  Such opinions, even when offered by a treating source, are never entitled to controlling weight or given special significance." *Duncan v. Colvin*, 608 F. App'x 566, 573 (10th Cir. 2015) (citations omitted).

(AR, at 22) (emphasis added).  This analysis of the objective support and consistency of the opinion is what is required by step one of the treating physician analysis.  *Krauser*, 638 F.3d at 1330.  Because the ALJ did not find the opinions to be well-supported and consistent, she did not give them controlling weight.

The ALJ proceeded to step two of the analysis and assigned "partial" weight to the opinions, finding the opinions undermined by two highly pertinent factors: "the degree to which the physician's opinion is [or is not] supported by relevant evidence" and the "consistency [or inconsistency] between the opinion and the record as a whole."  *See Langley*, 373 F.3d at 1119; 20 C.F.R. § 404.1527(c).  The ALJ's detailed summary of Plaintiff's multiple visits with Dr. Reyna (AR, 17-22) show that the ALJ considered the other factors of the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, and the fact that Dr. Reyna was a multiple sclerosis specialist.  The ALJ sufficiently "explain[ed] or identif[ied] what the claimed inconsistencies were between [the treating source] opinion and the other substantial evidence in the record."  *Langley*, 373 F.3d at 1123.  Thus, the ALJ's reasons for not giving controlling weight to Dr. Reyna's opinions are "sufficiently specific to enable this court to meaningfully review [the] findings."  *Id.* (internal quotation marks omitted).

There is no evidence to suggest, as Plaintiff claims, that the ALJ's assessment of Dr. Reyna's treating source opinions was "based on the assumption that Dr. Reyna gave her opinion without any medical judgment or assessment intervening."  (Doc. 20, at 24). It is true that an ALJ cannot reject a treating source's opinion based on the assumption that

the opinion was provided "as an act of courtesy." *Langley*, 373 F.3d at 1121.  However, there is no indication that the ALJ made such an assumption when considering Dr. Reyna's treating source opinions.

Moreover, the ALJ did not "interpose her own medical expertise" in rejecting Dr. Reyna's November 29, 2016, opinions.  (*See* Doc. 20, 22).  Rather, there was substantial evidence in the record, which the ALJ summarized in detail (AR, 17-22), to support her finding that Dr. Reyna's opinions about Plaintiff's functionality were not consistent with Dr. Reyna's own treating notes or with other evidence in the record.  This evidence includes the following:

In November 2015, Plaintiff stated at her multiple sclerosis (MS) follow-up appointment with Dr. Reyna that her symptoms had improved since starting Tysabri (AR, at 518).  She stated that amitriptyline and tizanidine were controlling her symptoms and her fatigue had improved without Nuvigil (AR, at 518).  Her neurological examination was essentially normal with the exception of decreased motor strength of the quadriceps muscle and decreased sensation to the left lower extremity (AR, at 521-22).

At an MS follow-up with Anthony Sharp, PA-C,[5] in February 2016, Plaintiff again reported that her symptoms had improved since she started Tysabri (AR, at 512).  She reported symptoms of numbness and tingling in her fingers and legs the week prior to this encounter (AR, at 512).  She had no new complaints during this encounter and denied any new and worsening neurological symptoms that would be indicative of disease progression

---

[5] Anthony Sharp, PA-C, treated Plaintiff under the supervision of Dr. Reyna and thus his notes would be available to Dr. Reyna.

(AR, at 512).   Her neurological examination was unremarkable and her cranial nerve examination was normal (AR, at 515-16).   Her motor examination showed full (5/5) strength in all muscle groups tested (AR, at 516).   She ambulated with a slow gait and normal station (AR, at 516). She was able to walk on her toes and heels, and her tandem walk was normal (AR, at 516).   Plaintiff was noted to be clinically stable (AR, at 516).

In July 2016, Plaintiff presented for another MS follow-up with Mr. Sharp (AR, at 494).   She reported fatigue, back pain, and a tremor in her left leg (AR, at 494).   She had been prescribed Tysabri since July 2015 without issues (AR, at 494).   Plaintiff's most recent MRI of the brain was stable with no enhancing lesions (AR, at 495).   Her cervical spine MRI dated July 2016 showed a single very subtle lesion at the C6-C7 disc space (AR, at 495).   On examination, Plaintiff was ambulatory and in no acute distress (AR, at 497).   Her motor strength was normal (AR, at 497). She ambulated with an antalgic gait, but was able to toe walk, heel walk, and tandem walk (AR, at 498).   She was assessed with relapsing, remitting MS, which was not active and non-progressive (AR, at 498).

In August 2016, Plaintiff presented to the Medical Center Pain Clinic for evaluation and treatment of chronic pain of the back, hip, and knee (AR, at 687).   On examination, Plaintiff had normal range of motion of the cervical spine, with moderate cervical spasms (AR, at 688).   Her upper extremity reflexes and sensation were intact (AR, at 688).   She had full painless range of motion in all peripheral joints and intact grip strength (AR, at 688).   There was painless range of motion of the lumbar spine with mild to moderate palpable spasms noted in the thoracic and lumbar spine (AR, at 688).   Her straight leg raise test was negative (normal) bilaterally (AR, at 688).

On November 29, 2016 – the same date Dr. Reyna rendered the opinions at issue in this appeal – Plaintiff reported to Dr. Reyna that she had no new symptoms or exacerbations and her headaches were controlled with Botox injections (AR, at 847). Her fatigue had "greatly improved" (AR, at 847). She had established care with a pain management specialist and stated her pain was better controlled following epidural and trigger point injections (AR, at 847). On examination, Plaintiff had normal fine motor movements and full strength (5/5) in all muscle groups (AR, at 851). Dr. Reyna noted Plaintiff had a normal gait and that Plaintiff could toe, heel, and tandem walk normally (AR, at 851). Dr. Reyna assessed Plaintiff's MS as "clinically and radiologically stable" and her chronic pain and "improved" (AR, at 852). These notes are inconsistent with the functionality opinions she rendered to American Fidelity Assurance that day.

In January 2017, Plaintiff underwent a physical therapy functional movement evaluation (AR, at 844). Plaintiff reported she was currently independent in performing all daily activities to include driving (AR, at 844). She was currently engaging in aquatic therapy (AR, at 844). She was noted to have diminished motor strength of 4/5 in the left lower extremity (AR, at 844). Her range of motion was normal in all extremities (AR, at 844). She was referred for physical therapy as part of a pain management strategy (AR, at 845).

Plaintiff saw Monica Harden, D.O., in January 2017 for chronic back pain (AR, at 951). Her neurologist did not think her MS diagnosis was a contributing factor to her pain (AR, at 951). She reported back pain and stiffness but denied loss of strength or muscle

aches (AR, at 952).  On examination, she had normal range of motion in all joints (AR, at 953).

Plaintiff underwent a new rheumatology visit in April 2017 with Fahed Hamadeh, M.D. (AR, at 1206).  On examination, she had intact sensation and her gait was normal (AR, at 1209).  Plaintiff exhibited tenderness to the thoracic and lumbosacral spine, shoulders, elbows, and wrists (AR, at 1209).  Her hand joints were normal (AR, at 1209). She endorsed tenderness to the hips, knees, and ankles (AR, at 1209).  Her muscle strength was fair (AR, at 1209).

Plaintiff returned for an MS follow up with Mr. Sharp in May 2017 (AR, at 838). She reported no new neurological symptoms that would be concerning for relapse (AR, at 838).  Her neurological examination showed that she was alert with normal affect, orientation, fluency, memory, attention, and comprehension (AR, at 841).  Her cranial nerve examination was normal (AR, at 841).  Motor strength was 5/5 in all muscle groups tested (AR, at 841-42).  She ambulated with a normal gait and was able to walk on her toes and heels and tandem walk (AR, at 842).  Her brain MRI showed disease stability (AR, at 842).

In July 2017, stage agency physician Craig Billinghurst, M.D., reviewed Plaintiff's medical records to determine what functional limitations might be resulting from her medical impairments (AR, at 108-10).  Noting largely normal clinical findings as to functional abilities throughout the medical record, Dr. Billinghurst opined that Plaintiff retained the ability to perform light level work (AR, at 109-10).

Plaintiff continued to report back pain in August 2017 (AR, at 1160).   On examination, Plaintiff appeared in no acute distress and her gait was normal and steady (AR, at 1162).   Her back examination was limited due to pain (AR, at 1162).   She had cervical, thoracic, and lumbar spine tenderness to palpation (AR, at 1162).   However, her lower extremity strength was normal bilaterally (AR, at 1162).   Her sensation, reflexes, and coordination were grossly intact, with normal muscle strength and tone (AR, at 1162).

In November 2017, a second state agency physician, Karl Boatman, M.D., reviewed the medical records and, again citing largely normal clinical findings throughout the record, agreed with Dr. Billinghurst and opined that Plaintiff retained the ability to perform light level work (AR, at 126-27).

Plaintiff saw Dr. Reyna in February 2018 (AR, at 1186).   Plaintiff reported she was no longer treated by pain management and was getting Tramadol from her primary doctor for back and joint pain (AR, at 1186).   She denied any new neurological symptoms (AR, at 1186).   On examination, Plaintiff appeared to be in no acute distress and ambulated independently (AR, at 1190).   Her motor strength in her upper and lower extremities was 5/5 (AR, at 1190).   She had decreased sensation to pain and temperature on the left, but had otherwise intact sensation (AR, at 1190).   Her coordination was normal and she was able to toe and heel walk as well as perform a tandem gait (AR, at 1191).   Dr. Reyna assessed Plaintiff's MS as "clinically stable" (AR, at 1191).

Plaintiff returned for follow-up with Dr. Reyna in June 2018, when she was four weeks pregnant (AR, at 1193).   At that time, all her medications were stopped, and she was advised to establish care with an obstetrician (AR, at 1193).   On examination, she was well-

nourished, well-developed, and in no acute distress (AR, at 1197). She had nearly normal strength, with only some notations of slightly decreased (5-/5) strength on the left (AR, at 1197). She had normal sensation throughout (AR, at 1197). She walked with a normal gait, was able to walk on her toes and heels, and could tandem walk normally (AR, at 1198). Dr. Reyna noted that Plaintiff's MS remained "clinically stable" with no new neurological findings (AR, at 1198).

As the foregoing summary of the record evidence makes clear, Dr. Reyna's November 29, 2016, opinions regarding Plaintiff's lifting, sitting, and manipulative limitations were not well supported by or consistent with Dr. Reyna's own treatment notes or other evidence in the record. Because the ALJ applied the correct legal standard in giving the opinions partial, rather than controlling, weight, and because her conclusion was supported by substantial evidence in the record, this court cannot "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

There is also evidence in the record, which was considered by the ALJ, supporting Plaintiff's claims of pain in her back and upper and lower extremities. "In short, the record contains support for both the notion that" Plaintiff has some limitations of her ability to lift, sit, and manipulate her fingers and that she is not as limited as Dr. Reyna's opinions would suggest. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). "The ALJ was entitled to resolve such evidentiary conflicts and did so." *Id.* Indeed, the ALJ was presented with findings from Drs. Billinghurst and Boatman, concluding that Plaintiff retained the ability to perform light level work, and an opinion from Dr. Reyna that Plaintiff

could not even perform sedentary work (AR, at 109-10, 126-27, 1173-76). The ALJ assessed the opinions in light of objective medical evidence in the record that provided insight as to Plaintiff's functional abilities, assigned all three of them partial weight, and reasonably reconciled the opinions, finding that Plaintiff's functional abilities were in the middle of the conflicting opinions. The Tenth Circuit has repeatedly, and just recently, confirmed that adopting a "middle ground" is a reasonable approach that is consistent with the ALJ's prerogative to weigh the medical evidence. *See Guillar v. Comm'r.* __ F. App'x __, 2021 WL 282274 (10th Cir. 2021) (unpublished), citing *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (upholding approach of ALJ who "arrived at an assessment between the two medical opinions without fully embracing either one").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. For the reasons stated above, Defendant Commissioner's final decision is AFFIRMED. Judgment will issue accordingly.

ENTERED this 30th day of August, 2021.


AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE